(76 Misc. Rep. 310.)

## In re BENNETT.

### (Supreme Court, Special Term, Suffolk County. April, 1912.)

INTOXICATING LIQUORS (§ 66*)—LIQUOR TAX LAW—LICENSES—PROPERTY OWN-ERS—CONSENT—"OCCUPIED EXCLUSIVELY FOR A DWELLING."

 The owner of a two-story building having two show windows with an entrance between them conducted a laundry therein from July until September, when the sign was taken down and not replaced until the following June or July, when the business was resumed. *Held* that, though the owner lived in a part of the building, it was not "occupied exclusively for a dwelling" within Liquor Tax Law requiring consents to the granting of liquor licenses, and therefore could not be counted in ascertaining the owners of the surrounding homes to the proposed application for a liquor tax certificate, though on the date of the application the sign was down and the laundry had been suspended for the season.

 [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 66; Dec. Dig. § 66.*

 For other definitions, see Words and Phrases, vol. 6, p. 4908.]

Application by Edward W. Bennett for an order revoking and canceling Liquor Tax Certificate No. 22,183 issued to William H. Jones. Application granted.

Robert P. Griffing, for E. W. Bennett.

Harri M. Howell (Joseph M. Belford, of counsel), for William H. Jones.

PUTNAM, J. Among the six consents filed on September 26, 1910, by Maria Jones, the original licensee, was one by William H. Jones, for a two-story building on Job's lane, Southampton. The building had two show windows fronting upon the street with a middle door entrance between them. From July to some time in Septem-

ber, Mrs. Jones carried on a laundry there, with a sign four or five feet long, by twelve inches wide, reading, "New York Laundry." In September, 1910, this sign had been taken down; but in the following June or July it was replaced, and the laundry traffic resumed. The expanse of show windows was then hung with laundered articles; people came and went carrying bundles and large packages wrapped with cloth. From arriving vehicles packages were carried in, and also taken out, at this front entrance. Mrs. Jones had at least two persons working with her in this laundry. During the summer Mrs. Jones lived in some part of this building, probably in the floor over the working rooms, in which ironing could be plainly seen from the street.

It is thus established that one of the buildings counted as exclusively dwellings was used as a laundry during the summer season, although on September 26, 1910, the date of the consent and application, the sign was down and the business of the laundry had been suspended for that season to be resumed in the following year. Nevertheless, it is claimed that when this application was filed this building was used exclusively as a dwelling.

As to its design and construction, it was obviously for business purposes, with show windows inviting public trade by a conspicuous sign following which it appears to have been frequented by the public in delivering and receiving laundry articles. While it is true that, during the summer, Mrs. Jones did live in some part of the building, it was incidental to the business and could not make the place a dwelling. People ex rel. Cairns v. Murray, 148 N. Y. 176, 42 N. E. 584. The fact that the sign was taken down before the application for this license (especially as this building was controlled by the applicant for the license) could not change the character of the building which had been used as a laundry for many years, and, as the records prove, continued to be so used during the succeeding summer.

The occasional use of some part of a house kitchen for outside washing is widely different from the habitual and public occupation of a building for laundry purposes, so proclaimed by a sign, with a show window display at the street line, which appeal for custom brings people into the place for general laundry business. Matter of Lyman, 26 Misc. Rep. 568, 569, 57 N. Y. Supp. 488, 489. The language of the Legislature is "occupied exclusively for a dwelling." If this strict wording can be extended to mean the general and preponderating use, then that use is not to be determined by the fractional part of the year, but by the occupation of the building in the period of its activity even if that be only for the season of summer boarders. The spirit and purpose of this law is to regard specially the privacy of dwellings, and to uphold the rights of owners in a residential section, by protecting them against the approach and intrusion of this traffic in liquors. Buildings displaying evidences of active trade, even if lived in, are not exclusively occupied for dwellings; and are not to be counted to ascertain if the owners of the surrounding homes assent to the proposed application.

Hence it follows that, instead of nine, there were but eight dwellings within legal radius, even if there are counted all the other consents, including those also questioned. The statute required consents

on behalf of at least two-thirds of eight, and, as the applicant had only five, he lacked the requisite two-thirds, and the statement in the application was therefore false.

The certificate must accordingly be revoked and canceled, with costs. Certificate revoked and canceled, with costs.